IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

THOMAS T. on behalf of E.G.T., a minor,
on behalf of Estate of Megan E. D-H.,[1]

        Plaintiff,

v.

Civil Action No.
5:21-CV-1225 (BKS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

APPEARANCES:          OF COUNSEL:

FOR PLAINTIFF

OLINKSY LAW GROUP         CHRISTOPHER MILLIMAN, ESQ.
250 South Clinton Street, Suite 210     HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.         HUGH DUN RAPPAPORT, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

---

[1] This action was originally commenced by the claimant, Megan E. D-H. The court was notified on January 17, 2023 that she died during the pendency of this action. Dkt. No. 21. Based upon that event, Thomas T., on behalf of the claimant's minor child, E.G.T., has been substituted as the named plaintiff, pursuant to Federal Rule of Civil Procedure 25. Dkt. No. 22.

REPORT AND RECOMMENDATION

The original plaintiff, now deceased, has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied.[2] The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, and, as a result, remand is warranted for further proceedings.

I.    BACKGROUND

The claimant was born in January of 1984, and is currently thirty-eight years of age. She was thirty-one years old on April 30, 2015, the date upon which she alleges that she became disabled. The claimant measured five feet and four inches in height, and weighed between approximately one

---

[2]    To avoid confusion, the deceased plaintiff will be referred to as the "claimant."

hundred fifty and two hundred pounds during the relevant period. She lived for the majority of the relevant period in an apartment with her minor daughter in Oswego, New York.

The claimant reported that she graduated from high school and eventually obtained an associate's degree in business administration. She was previously employed most substantially as a packager for a company that baked gourmet dog treats, a caregiver for handicapped adults, and a substitute teacher.

In support of her application for benefits, the claimant alleged that she suffered from anxiety, panic attacks, posttraumatic stress disorder ("PTSD"), and depression. As is relevant to her application, the claimant treated for her impairments with numerous sources, including physician's assistant ("PA") Mary Barbara, Dr. Patrick Carguello, licensed master social worker ("LMSW") Angela Christmas-Mattison, nurse practitioner ("NP") Tammy Balamut, LMSW Kathleen Pollard, and NP Diane Plumadore.

The claimant alleged that she experienced significant limitations in her ability to function as a result of her anxiety, which prevented her from being able to drive for more than twenty minutes at a time and caused her to not want to leave her home. She lost her job as a caregiver because, after her anxiety increased in 2010 when a client died in her arms, she

began experiencing greater anxiety and panic attacks that caused her to take too many breaks and have excessive absences from that job.  The claimant reported that she could only be in public spaces, such as a grocery store, for fifteen minutes before her anxiety became too strong and she was required to leave.  She did not like to be around people and only interacted with select family members, her child's teachers, and some of her neighbors.  She stated that she generally did not leave her house other than to drive to the grocery store and to take her daughter to school, counseling, and a weekly dance class.  The claimant reported that her anxiety made it difficult for her to concentrate or maintain a schedule, and that she had low energy during the day.

II.     PROCEDURAL HISTORY

    A.     Proceedings Before the Agency

The claimant applied for DIB and SSI payments under Titles II and XVI of the Social Security Act on December 11, 2015, and May 23, 2019, respectively.  After conducting hearings on her Title II claim, administrative law judge ("ALJ") Elizabeth W. Koennecke issued a decision on September 7, 2018, finding that the claimant was not disabled and therefore ineligible for the benefits sought by her.  On May 7, 2019, the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of

the ALJ's decision.

The claimant subsequently appealed to this court. On March 5, 2020, U.S. Magistrate Judge Miroslav Lovric remanded the matter for further consideration by the agency, based on a stipulation of the parties. Pursuant to that remand order, the Appeals Council issued its own order and remanded the matter for consideration of certain specific issues, including a proper assessment of claimant's subjective reports of symptoms and of opinion evidence related to her attention and concentration deficits. The case was subsequently reassigned to ALJ Gretchen Mary Greisler, who held hearings regarding claimant's Title II and Title XVI applications on October 9, 2020, February 11, 2021, and August 26, 2021. ALJ Greisler issued another unfavorable decision on September 8, 2021, finding that the claimant was not disabled. The claimant subsequently appealed again to this court, pursuant 20 C.F.R. §§ 404.984 and 416.1484.

    B.    <u>The ALJ's Decision</u>

In her decision, ALJ Greisler applied the familiar, five-step sequential test for determining disability. At step one, she found that the claimant did not engage in substantial gainful activity during the relevant period. The ALJ next found at step two that the claimant suffered from severe

impairments that imposed more than minimal limitations on her ability to perform basic work functions, including a depressive disorder, a bipolar disorder, an anxiety disorder, a personality disorder, and PTSD. As part of her step two finding, ALJ Greisler also found that the claimant's history of problems with her right knee did not rise to the level of a severe impairment.

At step three, ALJ Greisler examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that the claimant's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 12.04, 12.06, 12.08, and 12.15, addressing depressive, bipolar and related disorders, anxiety and obsessive-compulsive disorders, personality and impulse-control disorders, and trauma and stressor-related disorders, respectively.

ALJ Greisler next surveyed the available record evidence and concluded that, despite her impairments, the claimant retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, as defined by the controlling regulations, with the following exceptions:

> she is able to perform simple tasks at a consistent pace. She can tolerate occasional contact with supervisors and coworkers, as well as incidental contact with the public. However, the tasks performed should not require working in conjunction with others, and they should predominantly involve working with objects rather than people. Finally, the claimant is able to make simple decisions directly related to her work, and she can tolerate gradually introduced minor changes.

ALJ Greisler went on to step four and concluded that the claimant was unable to perform her past relevant work. Proceeding to step five, the ALJ elicited testimony from a vocational expert and, relying on that testimony, concluded that the claimant remained able to perform available work in the national economy, citing as representative positions the jobs of housekeeper cleaner, dishwasher, and janitor. Based upon these findings, ALJ Greisler determined that the claimant was not disabled at the relevant times.

C.    This Action

The claimant commenced this action on November 11, 2021.[3] In support of her challenge to the ALJ's determination, the claimant argued primarily that the ALJ erred in failing to comply with the Appeals Council's

---

[3] This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18. Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

7

remand order in a number of specific ways that will be discussed in greater detail below. Dkt. No. 13.

Oral argument was conducted in this matter, by telephone, on January 27, 2023, at which time decision was reserved.

III.  DISCUSSION

   A.  Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to

suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

11

C.   Analysis

   1.   Assessment of Error in the ALJ's Decision

Prior to her death, the claimant argued that the ALJ committed legal error by failing to comply the Appeals Council's remand order. Dkt. No. 13, at 16-23. Specifically, she claimed that the ALJ (1) failed to explain the absence of any limitation related to concentration, attention, and off-task time despite multiple opinions, including those of Dr. Patrick Carguello, claimant's treating source, and Dr. Jeanne Shapiro, a consultative examiner, which confirm such limitations, (2) failed once again to appropriately weigh the relevant opinion evidence, including opinions from Dr. Carguello and Dr. Shapiro that, in its remand order, the Appeals Council indicated the ALJ failed to properly assess in the previous decision, (3) again relied on claimant's activities of daily living and status as a single mother in evaluating plaintiff's reports of symptomology without considering the full range of limitations she reported, (4) again relied on supposed improvement in her symptoms while ignoring evidence to the contrary regarding her anxiety, and (5) again failed to explain how citations to normal findings and certain activities of daily living would translate into an ability to work on a full-time, sustained basis. *Id.* The Commissioner initially challenged the claimant's assertion of error when filing her opposing

motion for judgment on the pleadings, but later conceded at oral argument that the ALJ committed errors that merit remand. Because the parties agree that remand is warranted, and because my own review of the issues in this case align with that agreement, I recommend that this matter be remanded. The only remaining question is whether such remand should be for further proceedings before the agency, as argued by the Commissioner, or for a directed finding of disability, as the claimant's counsel contends.

### 2. Nature of the Remand

Citing the length of time that has passed since the claimant first applied in 2015 for benefits and the completeness of the record, her counsel seeks a remand with a directed finding of disability for the sole purpose of calculating benefits owed. Dkt. No. 13, at 22-23. The Commissioner, by contrast, argues that this matter should be remanded for further proceedings before the agency because there is evidence in the record from which a reasonable ALJ could find that the claimant is not disabled when the proper standard is applied. Dkt. No. 14, at 12-13.

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388

13

F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405[g]). The Second Circuit has held that, where there are gaps in the administrative record or the ALJ has applied an improper legal standard, remand for further development of the evidence is warranted. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted). Thus, remand for further administrative proceedings is the overwhelmingly preferred course where the administrative record contains gaps and further findings would "plainly help to assure the proper disposition" of the claim. *Glass v. Colvin*, 12-CV-1332, 2014 WL 5361471, at *6 (N.D.N.Y. Oct. 21, 2014) (Young, J.) (citing *Butts*, 388 F.3d at 385). If, however, "the record contains persuasive proof of disability, and a remand for evidentiary proceedings would serve no useful purpose," reversal for calculation of benefits is appropriate. *Harry L. v. Comm'r of Soc. Sec.*, 18-CV-0282, 2019 WL 3937224, at *5 (N.D.N.Y. Aug. 5, 2019) (Baxter, M.J.) (citing *Rosa*, 168 F.3d at 82-83). "The Court's determination whether to remand for further administrative proceedings or for a calculation of benefits is discretionary." *Virginia D. F. v. Comm'r of Soc. Sec.*, 21-CV-0720, 2022 WL 4652361, at *23 (N.D.N.Y. Aug. 29, 2022) (Hummel, M.J.) (quoting *Milliken v. Saul*, 19-CV-9371, 2021 WL 1030606, at *12 (S.D.N.Y. Mar. 17, 2021)).

Although the amount of time that the claimant's applications for benefits have been pending is concerning, I decline to recommend the disposition sought by the claimant. While acknowledging that this case has been remanded once before by this court and that the ALJ's decision pursuant to that previous remand is again deficient in its analysis, I do not believe that further consideration by the agency would be a futile exercise. The opinion evidence does arguably provide a basis to find that the claimant might perhaps meet the standard for disability, particularly as to the ability to remain on-task during a workday.[4] However, the relevant question is whether those opinions are consistent with the medical

---

[4] I note that the ALJ relied most heavily on the various opinions from the state agency psychiatric consultants in formulating her RFC determination in the most recent decision. It is worth pointing out, for purposes of guidance to the ALJ on remand, that none of these sources rendered an opinion explicitly addressing off-task needs – to the extent that such an opinion is not implicit in their finding that the claimant remained capable of performing a range of simple or unskilled work. *See Claudio-Montanez v. Kijakazi*, 2022 WL 17819123, at *5 (2d Cir. 2022) (finding that an opinion that the claimant was able to sustain focus and attention for full-time work could not be inferred from a state agency physician's assessment of an ability to perform physical functional abilities for an eight-hour workday). In addition, none of them had the opportunity to consider the treatment notes from treating therapist Kathleen Pollard in particular when rendering their opinions, as Ms. Pollard's notes were not entered into the record until September of 2020. AT 1615. I also note that, to the extent that the ALJ relied on the testimony of medical expert Dr. Gerald Koocher to support her findings, the transcript related to his testimony indicates that he was explicitly directed by the ALJ to limit his opinion to the period between April 30, 2015 and September 30, 2018, based on the fact that the claimant had not yet filed a Title XVI application at the time of that hearing. AT 909. The ALJ here did not appear to consider how that limitation did or did not affect her assessment of the claimant's RFC for the entirety of the relevant period, or whether the ALJ afforded any weight to his opinion after the date to which it was applicable. The assigned ALJ should keep these facts in mind when assessing the claimant's claims on remand.

evidence, and the ALJ's failure in this case to show that she properly considered all of that evidence when assessing the opinions prevents meaningful review on that point.  Specifically, I note that, despite this case being subject to the prior regulations regarding the assessment of opinion evidence, including the treating physician rule, it is not wholly apparent whether the ALJ applied the relevant standard.  Indeed, in her discussion of the opinion from Dr. Carguello, it is not clear to what extent, if at all, the ALJ considered the fact that Dr. Carguello was a treating physician or the nature of that treating relationship, or indeed whether the ALJ applied the more deferential treating physician rule to his opinion.  AT 866.  Further, the ALJ's discussion of the evidence, both throughout her decision and specifically in support of her conclusions regarding the weight merited by each of the opinions, suggests that the ALJ's review of the record may have been improperly selective and skewed in favor of findings where plaintiff displayed little or no mental symptoms, while failing to explain how she balanced the contrary positive findings in the record.  Due to the nature of the errors here, where there is conflicting opinion and medical evidence that the ALJ has not properly resolved, rendering a finding that there is persuasive evidence of disability based on the fact that there are multiple opinions in plaintiff's favor would essentially require the court to usurp the

powers of the ALJ and resolve such conflicts in the first instance. Because "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve," I recommend that remand for further proceedings to resolve the relevant issues is the more appropriate course of action. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *accord Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015).

In sum, given the volume of the treatment evidence in the record and the complex and conflicting issues presented by that evidence in the form of fluctuating severity of claimant's symptoms, I believe that the appropriate course is for the agency to properly consider and weigh all of the evidence in the first instance, as is its duty under the regulations. I will, however, depart from the general course of things and recommend that the court order that the case be reassigned to a different ALJ on remand, as the egregiousness of the failure to provide thoughtful consideration of the evidence despite the Appeals Council's order merits assigning the matter to a different adjudicator. *See McDowell v. Colvin*, 11-CV-1132, 2013 WL 1337152, at *15 (N.D.N.Y. Mar. 11, 2013) (Bianchini, M.J.) (collecting cases where remand to a different ALJ was ordered under circumstances where there are "serious concerns about the fundamental fairness of the disability review process," including where there is a clear indication that

the ALJ will not apply the appropriate legal standard on remand, or where "a fresh look by another ALJ . . . would be beneficial").

## IV.     SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised in support of the challenge to the Commissioner's determination, I recommend a finding that the determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 14) be DENIED, the Commissioner's decision be VACATED, and this matter be remanded for further proceedings consistent with this decision and order, without a directed finding of disability, and to a newly assigned ALJ, pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 31, 2023
       Syracuse, NY

                                    DAVID E. PEEBLES
                                    U.S. Magistrate Judge